[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action is brought by the plaintiff wife for dissolution of her marriage to the defendant husband on the grounds of irretrievable breakdown. The plaintiff appeared through counsel and the defendant appeared pro se.[1] Testimony was heard on June 4, 1999, and June 17, 1999. Having heard the testimony and observed the demeanor of the parties and witnesses and having examined all exhibits, the parties' financial affidavits and written proposed orders, the following findings are made. CT Page 8754
The parties were married on July 8, 1995, in New Hartford, Connecticut. No minor children were born to them. The plaintiff has two (2) grown daughters by a prior marriage. The defendant has a teenage son Clifford who has been diagnosed with attention deficit disorder (ADD). Both parties are in good health. Mrs. Goodenow is fifty-three (53), has a music degree from Hart College, and is employed both as an office manager for a business known as Business Quarters and as Director of Music for a local church. Mr. Goodenow is a self-employed contractor.
When the couple met, Mrs. Goodenow owned a home at 45 Gracey Road in Canton and she resided there.[2] The defendant then having no place to live, the plaintiff invited him to move in with her and they remained there for two (2) years before the property was sold. During that time, the plaintiff paid all of the expenses associated with the ownership of the property. However, on August 16, 1990, by quitclaim deed recorded on August 17, 1990, the defendant became half-owner of that property. Mrs. Goodenow's testimony was that she did not request title be placed in Mr. Goodenow's name as well as her own and that she thought the transfer was accomplished "for cash purposes." On August 16, 1990, the lot sold for approximately $70,000; on August 17, 1990, the house sold for $190,000.00. The defendant's testimony was that the profits realized from these sales were as a result of improvements he made. Specifically, the evidence was that he caused a large deck to be added, designed a septic system and arranged both for that and a well, renovated a bathroom (though the plaintiff testified he left a hole where a shower had been), made repairs to a remote building, and — together with the plaintiff — re-painted the house.
The couple bought a home at 252 Steele Road in New Hartford for $202,000.00 in 1990. The down payment — approximately $60,000 came from the profits on the Gracey Road property. The defendant testified he made extensive improvements on this property also. He stated he built a dining room with windows and skylights and French doors, added bookcases and shelves and new flooring in the library, accomplished major renovations to the kitchen, improved the first floor bathroom, stained the house, caused the driveway to be resurfaced and arranged for follow-up maintenance, and did extensive work on a barn. Despite the deed to this property being in both parties' names, Mrs. Goodenow testified the mortgage is in her name alone. Each party was to pay half the mortgage and yearly taxes (There was disputed testimony to the effect the defendant stopped making such payments and resumed them after a CT Page 8755 court order compelled him to do so.). The parties had agreed to evenly divide all other household expenses. At trial, each took the position the other had failed to accept his/her fair share of these costs. What is clear is that a second mortgage was taken primarily to pay off a lien on the property in the amount of $16,080.50, which lien was to secure a judgment against the defendant by a business creditor (The re-financing also made possible payments owed on various credit cards.). The present mortgage is $153,000.00.
The parties offered no appraisals. Despite all that Mr. Goodenow testified to having done to increase the value of the property, his financial affidavit (Defendant's Exhibit #2) lists its current value at $190,000 — $12,000 less than was paid for it nine (9) years ago and his testimony was that there is still extensive interior and exterior repairs and renovations to be done. Mrs. Goodenow's financial affidavit of June 4, 1999, lists the value as $200,000. The failure of the property to increase in value, she states, is not only as a result of its present state of clutter and disarray because of her husband's conducting of his business from the home and his unwillingness to clean or pick up after himself but also because of the home's general state of disrepair — i.e., closet doors which need to be re-hung, a portion of the deck still incomplete, etc. Both parties and Mr. Goodenow's son Clifford continue to reside in the marital home though Mrs. Goodenow has spent little time there in the last year because of the parties' relationship and the condition of the home. She would generally go from one job to the other and take dinner outside the home. She admitted to doing little or no cleaning of the home during that period because the home never stayed neat for very long.
Mrs. Goodenow presented as depressed and frustrated. She testified to not being permitted to discipline Clifford or to make any household decisions, to being frequently demeaned by her husband, constantly required to keep after him for his contribution to household expenses, and often embarrassed by his accusations and treatment of her both at home and on the outside. With regard to the latter, Mr. R. Jeffrey Harris, a former friend of both parties, testified that, at a party at the Harris home, the defendant became enraged that the plaintiff had contradicted something the defendant had said and that Mr. Goodenow became so belligerent toward his wife that Mr. Harris had to "get between the two of them." The witness described Mrs. Goodenow as being "scared" on that occasion. This same witness also testified to CT Page 8756 Mr. Goodenow having told him — more than once — that his wife was "deranged and had a chemical imbalance." Despite the defendant's attempt to impeach the credibility of this witness, Mr. Harris presented as straightforward and without a motive to harm either the defendant or Clifford whom Harris described as "a good boy." Relevant both to the credibility of this witness and to the wife's testimony of her husband's accusations is a letter Mr. Goodenow wrote to his wife's gynecologist on January 18, 1999 (Plaintiffs Exhibit #6), in which he described the plaintiff as "divisive" and "negative" and as habitually consuming liquor. In the same letter, he inquired whether the physician had informed Mrs. Goodenow of the danger of combining liquor and drugs (prescribed) though he admitted in that correspondence his wife had been off Prozac for almost a year (At trial. Mrs. Goodenow stated she had taken the drug as medically prescribed for two (2) years but had not taken the drug for the past two (2) years.). Though Mr. Goodenow requested a reply from his wife's doctor, he — not surprisingly — never received one but asks this court inter alia to order he be permitted to maintain his "constitutional right to contact" the gynecologist "in any future action by appropriate counsel." Absent a wife's consent to a treating physician's release of medical information to her husband, a husband has no constitutional right to receive the same. An ex-husband has neither a need for nor a privilege to obtain that information where, as here, there is no custody dispute and no childcare function to be performed by the former wife.
Mr. Goodenow presented as a very angry man; in fact, at trial, the defendant made no effort to conceal his disdain and anger toward the plaintiff, her daughters, or Mr. Harris. He was passionately accusatory with regard to each. Accepting as true his stated reason for such anger toward his wife, it is because he believes the plaintiff failed to honor a commitment she made prior to the marriage to provide a nurturing and loving home for him and Clifford. Mr. Goodenow's love for Clifford and his commitment to his son appears total and born of love yet he is incapable of accepting Mrs. Goodenow also loves Clifford though her parenting style specifically her desire to discipline him when appropriate — differs from that of the defendant. Illustrative of this was a situation in which Clifford had taken a necklace — an act which the young man admitted. When the necklace was recovered, it required repair. Mrs. Goodenow's response was that Clifford should accept the responsibility of paying for the repair while Mr. Goodenow's response was that the necklace should not have been left lying around (The defendant CT Page 8757 did not refute this testimony.). Clifford is an attractive, courteous, extremely presentable young man. Inexplicably, Mr. Goodenow appears to believe no person other than he loves Clifford. The evidence warrants a finding not only that the plaintiff felt true affection for Clifford but that she was prevented from parenting him in any meaningful way because Mr. Goodenow mistrusted her judgment and believed her to be a bad parent. That, he states, is the cause of the breakdown of the marriage.
Short of Mr. Goodenow's repeated and heated expressions of his belief the plaintiff was a bad mother who failed to provide a healthy home environment, the defendant adduced no evidence of that at trial. He testified the plaintiff called Clifford a "thief" but no independent witness testified to that (Clifford did say the plaintiff had said Clifford stole a wallet, a fact Clifford denied.). Clifford is clearly fond of the plaintiff. Referring always to her as "mom," Clifford, called to testify by his father, responded to his father's questions by stating both "you and mom" got him up in the morning, fed him, made sure his homework was done, and saw to it he took his medication. Though Mr. Goodenow criticized his wife because her younger daughter was seeing another man while she was married (a fact the daughter admitted), Mr. Goodenow offered no evidence to support his claim the daughter and her lover conducted their relationship in this couple's marital home where Clifford resided. The daughter, now 27 and a middle school teacher, denied ever having sex with this man in her mother's home. Though Mr. Goodenow stated numerous "Navy boys" telephoned this daughter at her mother's home, Clifford failed to confirm that when his father asked him that question and the defendant presented no evidence to support that claim. The defendant made much of this daughter's allegedly having left open on a table in her mother's home a diary detailing her sexual experiences. The daughter vehemently denied this and, again no independent evidence was proffered to warrant such a finding nor was there ever advanced the claim that Clifford had seen or read any diary entries. Mr. Clifford called the daughter's former husband to testify to his then wife's extra-marital activities but that gentleman had no direct knowledge or observations of the same. The defendant also called Rev. Richard Bauer, who married the parties, but Rev. Bauer could testify only to both parties having made a commitment to making a home and creating a family life for themselves and Clifford when they married four (4) years ago and he also testified to the defendant's being a "very competent" builder. CT Page 8758
Equally unsupported by the evidence was the husband's claim his wife was the financially irresponsible party. Mr. Goodenow testified his wife presently owed $12,000 in credit card debts but offered no documentary or other evidence to corroborate that claim. He testified his wife's daily work commute from New Hartford to Windsor Locks caused her to incur mileage significantly in excess of that permitted under the terms of the lease applicable to the car she drives. This ignores the fact the defendant, who had driven the car for two (2) years under the lease, was aware of the lease terms, aware of the wife's daily commute, and aware therefore of the mileage she would put on the car. Given that knowledge, he cannot now complain she is solely at fault for excess mileage since he could either have continued to drive the vehicle himself (and have driven fewer miles since he worked out of the home) or he could have turned in the vehicle and negotiated the lease of another vehicle with more favorable mileage terms. With regard to the defendant's fiscal responsibility, cross-examination established the defendant had not contributed to the payment of real estate taxes on the marital property, had not filed a federal tax return for a "good three years," and that three (3) judgment liens had been placed on the property — all for the reason of his refusal to honor bills when presented.
Finally, the defendant claimed Mrs. Goodenow was a bad partner because she failed to respond to social invitations from a gentleman employed by ESPN and he claims to have lost business as a result of her claimed lack of social grace. No evidence was offered to bolster this claim of lost business; in fact, on direct testimony, he stated, "I don't know what business I've lost."
Clifford is presently enrolled in the Regional District #7 school system, a public school system comprised of four (4) neighboring communities — to include New Hartford, the locus of the marital home. He appears happy there and is provided an aide, a counselor, and a psychologist — at no expense to Mr. Goodenow. Absent a re-location occasioned by the defendant's business opportunities, a possibility to which the defendant has testified, it is in Clifford's best interest to remain in this educational environment to which he has adjusted well and in which his ADD can be effectively addressed. This court's order will not disrupt that process and provides the defendant's son sufficient time to become familiar with a new home environment CT Page 8759 and to prepare for the upcoming school year in the school he knows — if that is in accord with his father's business plans.
Based upon the evidence and having considered the statutory requirements of Connecticut General Statute § 46b-81 and the applicable case law, the following orders are entered.
1. The court has jurisdiction, all statutory stays have expired, and the allegations of the plaintiff's complaint have been proven. The parties' marriage has broken down irretrievably and it is hereby dissolved. The wife's maiden name is restored and she shall hereafter be known as Halyna Petronchak.
2. The property at 252 Steele Road in New Hartford shall be placed on the market and sold. The wife shall choose the listing agent/realty company. Neither party shall do anything to diminish or destroy the value of the property or its contents before sale or transfer to a new owner. Each will do all it is within his/her power to do to enhance the appeal of the house prior to sale and encourage a quick sale. The defendant and his son shall vacate the premises no later than thirty (30) days from the date of this order. If the property is placed on the market before the defendant and his son vacate, they shall fully cooperate with the sale by doing such acts to include though not be limited to keeping the house and other structures neat and clean for showing to prospective purchasers. Neither party shall speak any words or do any acts to delay, impede, or frustrate an early sale at the optimum price. On the sale of the property, the plaintiff shall receive the first $45,000.00 of the net proceeds and, in consideration of improvements made by the defendant, the husband shall thereafter share equally with the plaintiff the remainder of the net proceeds. Until such time as he vacates the property, the defendant shall be responsible for one-half (1/2) of all household expenses to include but not limited to the mortgage payment, real estate taxes, homeowners' insurance, and operating and maintenance expenses.
3. The defendant is hereafter restrained from contracting either directly or by third party, personally, telephonically, or electronically Dr. Jodi Leopold or any other of the wife's medical, psychological, therapeutic or other health care providers or facilities who/which have treated, are treating, or may in the future treat the plaintiff. He is hereafter similarly restrained from contacting any of the wife's family or members of the wife's church with regard to any personal matters which in CT Page 8760 any way involve the wife or her children or which communications focus on the couple's marital relationship.
4. The plaintiff shall retain as her sole property the Disney stock, her 401K plan, and the annuity held jointly with her mother.
5. The defendant's medical insurance coverage, now provided by the wife's employer under policy #0049385544 issued by Anthem Blue Care, shall, at the husband's election, continue to be available to him at his expense through the exercise of his COBRA rights for the statutorily provided term. The wife shall do all that is necessary to cooperate with the husband should he choose this election of coverage.
6. The wife shall be solely responsible for the debts owed Visa and Cherry and Webb (as listed on her financial affidavit) and she shall indemnify and save harmless the defendant from same.
7. The husband shall be solely responsible for the debts owed Grossmans, County Bank, GAB, Citibank, and Worley Hardware — all as listed on his financial affidavit — and he shall indemnify and save harmless the wife from the same.
8. The husband shall be solely responsible for all state and federal income taxes owed by the parties for the years 1995 through and including 1998 and he shall indemnify and save harmless the wife on account of any federal or state income tax liability that may be claimed against her during this period on account of any tax returns filed by the husband — either individually or jointly — or any business, partnership, corporation, or other entity in which he was involved. Each shall provide to the other whatever documents — or copies thereof — in his/her possession and which are necessary to the filing by the husband of any state or federal income tax returns not yet filed. He shall provide her copies of all such returns filed within seven (7) days of their filing.
9. The husband shall solely retain the amount in the joint checking account at Webster Bank.
10. Each party shall maintain at his/her own expense life, casualty, automobile, and other applicable insurance. CT Page 8761
11. The wife shall pay her own attorney fees and the husband shall be solely responsible for past attorney fees incurred with regard to this dissolution.
12. The plaintiff shall retain the 1996 Ford vehicle. She shall be solely responsible for all maintenance costs, repairs, and outstanding loan payments and/or penalties and she shall indemnify and save harmless the husband with regard to the same. The husband shall retain the 1987 Ford truck and the 1995 Subaru. He shall be solely responsible for all maintenance costs, repairs, and outstanding loan payments and/or penalties and he shall indemnify and save harmless the wife with regard to the same. Each shall execute — within ten (10) days of the date of this order — the documents necessary to transfer title and to give effect to this provision.
13. The husband shall pay the wife the sum of $1.00 per year as alimony for the purpose of indemnifying the wife from any and all debts and taxes the husband is ordered to pay herein. That amount shall be modifiable only if the husband fails to indemnify the wife on account of debts or taxes provided for herein. This alimony shall not terminate on the remarriage of the wife but will terminate upon the death of either party.
14. The plaintiff shall refrain from initiating any contact — by any means. directly or through a third party — with the defendant's son Clifford.
15. The plaintiff shall retain all personal property she has requested and listed in her Proposed Orders of June 4, 1999, and identified as having been purchased by her before and/or during the marriage. Of the joint personal property listed therein, the plaintiff shall retain all items she has requested with the exception of the canoe which shall be the husband's. The husband shall retain the oak deck chairs, one (1) Morris chair, one (1) love seat and matching rocker, and Bandit the cat. Regarding any other item of personal property, if the parties cannot agree who shall keep the same, they shall arrange for mediation through family services.
Judgment enters accordingly this date.
SHEEDY, J.